IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FREDERICK C. WEIST  :

    v.  :  Civil Action No. DKC 10-1557

CITY CAPITAL CORP., et al.  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion filed by Defendant Mutual Property Management to dismiss for lack of personal jurisdiction or, in the alternative, to transfer. (ECF No. 7). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, this motion will be granted.

**I. Background**

The following facts are either undisputed or construed in a light most favorable to Plaintiff. At some point in 2007, Plaintiff Frederick C. Weist, a Maryland resident, agreed to participate in the "Credit-Investor Program" offered by Defendant City Capital Corporation ("City Capital"). (ECF No. 9, Ex. A, promotional materials).[1] The agreement contemplated

---

[1] Plaintiff has failed to file proof of service as to City Capital within 120 days after the complaint was filed, as required by Fed.R.Civ.P. 4(m). Moreover, the amended complaint

that Plaintiff would "purchase a property or properties in an urban area that was in the process of being converted from a less than salubrious area to one that would be stable." (ECF No. 6, amended complaint, ¶ 14). In exchange, City Capital agreed to provide tenants to lease any such property and to make mortgage payments for a limited period of time if tenants were not provided. The program also "allowed for a property management service, vetted and selected by City Capital, . . . to arrange for the recruitment of the tenant or tenants; the execution of the lease or leases for the property or properties; [and] token maintenance and security of the property or properties." (*Id*. at ¶ 18).

Pursuant to his agreement with City Capital, Plaintiff purchased two parcels of real property in Detroit, Michigan ("the Properties"). City Capital initially selected Defendant C.F. Geyer Properties ("Geyer")[2] to provide property management

---

does not clearly indicate the citizenship of this defendant. Pursuant to 28 U.S.C. § 1332(c)(1), a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." Plaintiff's amended complaint identifies City Capital only as "a business licensed under the laws of the State of Tennessee." (ECF No. 6, at ¶ 3). *See* Fed.R.Civ.P. 8(a)(1) ("[a] pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction").

[2] Plaintiff has also failed to file proof of service as to Geyer. Moreover, the amended complaint identifies this defendant as "a business licensed under the laws of the State of

services, but later solicited Defendant Mutual Property Management, LLC ("Mutual Property"), to assume management of Plaintiff's properties, among others involved in the program.[3] In or around December 2008, Mutual Property agreed to do so.

On or about February 20, 2009, Wendy Acree, a Mutual Property employee based in Michigan, sent to Plaintiff, by email, two management agreements – one for each of the Properties – which were signed by Plaintiff, in Maryland, and returned to Mutual Property, in Michigan. (ECF No. 1, Ex. F, management agreements; ECF No. 7, Ex. 1, Acree Decl., at ¶ 6). Thereafter, the Properties, which had fallen into states of disrepair under the management of Geyer, were "ransacked and rendered almost uninhabitable," allegedly due to the failure of Mutual Property to secure them. (ECF No. 6, ¶¶ 45, 48). Plaintiff spoke, by telephone, with Ms. Acree and/or other

---

Michigan" (ECF No. 6, at ¶ 4), and the agreements attached to Plaintiff's initial complaint make clear that Geyer is a corporation with a business address in Redford, Michigan. (ECF No. 1, Ex. E). Thus, like City Capital, the amended complaint does not contain a clear statement as to the citizenship of Geyer.

[3] Plaintiff's amended complaint characterizes this defendant as "a business licensed under the laws of the State of Michigan." (ECF No. 6, ¶ 5). Mutual Property's motion papers state, however, that it is a Michigan limited liability company. (ECF No. 7, Ex. 2, Declaration of J. Mark Heppard, at ¶ 4). A limited liability company has the citizenship of its members. *See General Tech. Applications, Inc. v. Exro LTDA*, 388 F.3d 114, 120 (4th Cir. 2004). While it appears highly unlikely that any of Mutual Property's members are citizens of Maryland, this point is in need of clarification.

Mutual Property representatives on a number of occasions related to his complaints that the Properties were being mismanaged, but conditions did not improve.

On June 14, 2010, Plaintiff commenced this action against City Capital, Geyer, and Mutual Property, alleging breach of contract and related claims. (ECF No. 1). He subsequently filed an amended complaint raising the same claims. (ECF No. 6). On August 20, 2010, Mutual Property filed the instant motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the case to the United States District Court for the Eastern District of Michigan. (ECF No. 7). Plaintiff has opposed this motion. (ECF No. 9).

**II. Analysis**

    **A.    Personal Jurisdiction**

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing,

or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Where, as here, the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and/or discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan Labs.*, 2 F.3d at 60. In determining whether the plaintiff has established a *prima facie* case, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes in the plaintiff's favor." *Mylan Labs.*, 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

"The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction" over the defendant. *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 703 (D.Md. 2004). Specific personal jurisdiction applies where a controversy is "related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). A court may exercise general jurisdiction, by contrast, where a defendant maintains "continuous and systematic" contact with the forum state. *Helicopteros*, 466 U.S. at 415 (quoting *Perkins v. Benguet*

*Consol. Mining Co.*, 342 U.S. 437, 438 (1952)). Here, Plaintiff asserts that specific jurisdiction applies insofar as his claims arise from Mutual Property's contacts with the State of Maryland.

A federal district court may exercise specific personal jurisdiction over a nonresident defendant if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003). Because the long-arm statute limits jurisdiction to cases in which the cause of action "aris[es] from any act enumerated," a plaintiff relying on it must "'identify a specific Maryland statutory provision authorizing jurisdiction.'" *Johansson Corp.*, 304 F.Supp.2d at 704 (quoting *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D.Md. 2001)).

Although Plaintiff asserts that jurisdiction is proper under §§ 6-103(b)(1), (3), and (4) of the Maryland long-arm statute, only subsection (b)(1), which confers personal

6

jurisdiction over a defendant who "[t]ransacts any business or performs any character of work or service in the State," could possibly apply.[4] A defendant need not be physically present in Maryland for this provision to confer jurisdiction, but its actions must "culminate in purposeful activity within the State." *Bahn v. Chicago Motor Club Ins. Co.*, 98 Md.App. 559, 568 (1993) (quoting *Sleph v. Radtke*, 76 Md.App. 418, 427, *cert. denied*, 314 Md. 193 (1988)) (internal marks omitted). Here, it is doubtful that Mutual Property's entering into contracts with a Maryland resident for the management of properties located in Michigan could constitute transacting business in the State of Maryland. *See Joseph M. Coleman & Assoc., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118-19 n. 2 (D.Md. 1995) ("I do not believe that a company . . . which (1) simply entered into a contract with a Marylander to have consulting work performed . . . in Pennsylvania, (2) never entered into Maryland in regard to that contract, and (3) merely directed correspondence and phone calls into Maryland from Pennsylvania can be reasonably said to have 'transacted business' in Maryland"). Even assuming that it

---

[4] Subsection (b)(3) applies where a person is alleged to have "[c]ause[d] tortious injury in the State by an act or omission in the State." The acts or omissions alleged by Plaintiff occurred in Michigan, not Maryland. Subsection (b)(4) applies where a tortious injury is caused in-state by "an act or omission outside the State" by a defendant that "regularly does or solicits business" or otherwise "engages in any persistent course of conduct in the State." The record does not support that Mutual Property has engaged in such conduct.

did, however, Plaintiff has failed to allege that Mutual Property has had sufficient minimum contacts with the State.

In the constitutional analysis, the crucial issue is whether the defendant's contacts with the forum state are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant has fair warning that it might be subject to a forum's jurisdiction if it purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros*, 466 U.S. at 414). Where a nonresident defendant has purposefully engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there and "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476.

The United States Court of Appeals for the Fourth Circuit has distilled these somewhat abstract concepts into a basic, three-pronged test:

> In determining specific jurisdiction, we consider (1) the extent to which the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *See Christian Science Bd.* [*of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001)]; *see also Helicopteros*, 466 U.S. at 414 & n. 8, 104 S.Ct. 1868 (describing a basis for jurisdiction where "a controversy is related to or 'arises out of' a defendant's contacts with the forum").

*ALS Scan*, 293 F.3d at 712. Only if the first prong is satisfied does the analysis proceed to consideration of the second and third prongs. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

Here, Plaintiff has submitted an affidavit, which mirrors the allegations of his amended complaint, averring that this court may exercise personal jurisdiction over Mutual Property because the defendant (1) initiated the business relationship between the parties, (2) engaged in a number of communications with Plaintiff – by phone, email, and/or U.S. mail – related thereto, and (3) deposited checks from Plaintiff drawn on a Maryland bank. (ECF No. 9, at 11; Plaintiff Aff., at ¶¶ 19, 32). Mutual Property does not dispute these contacts, but asserts that it has no others with the State of Maryland and that its due process rights would be violated if it were

9

required to litigate in this district based on these contacts alone. The court agrees.

Mutual Property is a Michigan limited liability company "engaged in the business of managing residential rental properties and activities ancillary thereto, solely in the State of Michigan." (ECF No. 7, at 3; Ex. 2, ¶¶ 4-7). It does not presently, nor has it ever, maintained offices or agents in Maryland; it has never owned, leased, or managed any property in this State; nor has it engaged in any significant or long-term business activities here. *See Consulting Eng'rs*, 561 F.3d at 278 (listing nonexclusive factors in the minimum contacts analysis). While it is true that Mutual Property initiated the contact with Plaintiff that gave rise to two of the contracts at issue, it only did so in relation to its selection as property manager by City Capital. As noted, City Capital was obligated to select a local property manager pursuant to its contract with Plaintiff; thus, the business relationship "initiated" by Mutual Property was, in fact, prompted by Plaintiff's own conduct. Under these circumstances, the critical factor of "whether the defendant reached into the forum state to solicit or initiate business," *Consulting Eng'rs*, 561 F.3d at 278, does not militate in favor of this court's exercise of personal jurisdiction. It is more significant that the property management agreements at issue relate to properties located in Michigan, and that the

10

defendant's performance was to occur exclusively in that State. *See Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc.*, 963 F.2d 90, 94 (5th Cir. 1992) ("[T]he place where the contract is to be performed . . . is a weighty consideration.").

In consideration of these facts, it cannot be said that Mutual Property has purposefully availed itself of the privilege of conducting business activities in Maryland such that the exercise of personal jurisdiction over it would be proper. Because the minimum contacts prong of the constitutional analysis is not satisfied, the court will not consider the two remaining prongs. *See Consulting Eng'rs*, 561 F.3d at 278.

### B. Venue and Transfer

Although this court lacks personal jurisdiction over Mutual Property – and, very likely, Geyer, for similar reasons – there can be no doubt, based on the facts alleged in Plaintiff's amended complaint, that the exercise of personal jurisdiction as to City Capital would be proper, assuming it can be established that service upon this defendant has been properly effected. Where venue is appropriate for some defendants, but not others, "the district court has wide discretion." 14D Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3827 (3d ed. 2007). It may transfer the entire case, pursuant to 28 U.S.C. § 1406(a), to another forum that would be proper for all of the defendants. *See In re Carefirst*

*of Md., Inc.*, 305 F.3d 253, 255-56 (4th Cir. 2002) (explaining that § 1406(a) "authorize[s] transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district"). Alternatively, it may dismiss Mutual Property from the case and retain jurisdiction as to the remaining Defendants. *See Advanced Datacomm Testing Corp. v. PDIO, Inc.*, Civ. No. DKC 08-3294, 2009 WL 2477559, at *9 (D.Md. Aug. 11, 2009) (citing Wright, Miller & Cooper, § 3827).

In this case, the interests of justice would best be served by a transfer to the United States District Court for the Eastern District of Michigan. *See* 28 U.S.C. § 1406(a) (court may, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"). Unquestionably, the action could have been brought in that district, as two of the three defendants are located and transact business there, all defendants would be subject to personal jurisdiction there, the Properties are located there, and performance of all relevant contracts was to occur there. Considering also that the majority of witnesses and evidence is likely to be located in that district, and that the interrelatedness of the parties and contracts at issue supports litigating Plaintiff's action against all three defendants in

the same court, a transfer would promote the interests of justice.

Accordingly, Mutual Property's motion to dismiss or to transfer will be granted; the case will be transferred, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Eastern District of Michigan; and Mutual Property's alternative motion to transfer under 28 U.S.C. § 1404(a) will be denied as moot.

### III. Conclusion

For the foregoing reasons, Mutual Property's motion to dismiss or, in the alternative, to transfer will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

13